IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JULIAN L. CHESIRE,

     Plaintiff,

vs.                                   CASE NO. 1:07cv70-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

                                /

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Julian L. Chesire, applied for disability insurance benefits and supplemental security income benefits. His insured status for disability insurance benefits expired on June 30, 2003, and for those benefits, he must show commencement of disability on or before that date.

Plaintiff was 23 years old at the time of the administrative hearing, has an 11th grade education, and has past relevant work as a dishwasher. Plaintiff alleges disability due to depression, personality disorder, and spinal injury. The Administrative Law Judge found that he has the residual functional capacity to do medium work,[1] can do his past relevant work, and therefore is not disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which

---

[1] 20 C.F.R. § 404.1567(c) provides: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c) is identical.

Case No. 1:07cv70-MP/WCS

support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

    4.    Does the individual have any impairments which prevent past relevant work?

    5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal Analysis**

    **Whether the Administrative Law Judge failed to fully develop the record by failing to obtain a mental residual functional capacity assessment form from a psychologist or psychiatrist**

    Plaintiff argues that the ALJ erred because he did not obtain a Mental Residual Functional Capacity Form, SSA 4734-F3-Sup, from a mental health provider. Doc. 15, p. 4. Plaintiff notes that William Beaty, Ph.D., completed such a form, but this was not at the request of the ALJ. Id., p. 5. Plaintiff asserts that the Commissioner's regulations required that the ALJ obtain a Mental Residual Functional Capacity evaluation from a consulting psychologist. Id., p. 4. Cited for this is Social Security Ruling 85-16. Plaintiff

also argues that the Administrative Law Judge determined his mental residual functional capacity from his daily activities, standing alone.  *Id.*, p. 5, citing R. 23.

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."  Sims v. Apfel,  530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), *citing* Richardson v. Perales, 402 U.S. 389, 400-401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).[2]  Additional evidence, however, is not necessary if the record contains sufficient evidence to make a decision.  Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999).

Social Security Ruling 85-16 does not support Plaintiff's claim that a specific form needed to be obtained by the ALJ.  The Ruling simply states that medical evidence is needed to determine a claimant's mental residual functional capacity.  For example, the Ruling states at one part:

> It is the responsibility of the program physician or psychologist, the disability hearing officer (DHO), the administrative law judge (ALJ), or the Appeals Council (AC) member to identify the pertinent evidence from medical and nonmedical reports and to make findings as to the individual's ability to perform work-related activities (RFC).  The determination of impairment severity and the resulting RFC constitute the medical evaluation of the mental disorder. . . .

> *Evaluation of Medical and Other Evidence*

> Medical evidence is critical to determinations of disability.  It provides medical history, test results, examination findings, and observations, as

---

[2]  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a *basic* obligation to develop a full and fair record."  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (emphasis added), *citing*, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  This basic duty exists whether or not the claimant is represented. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted).

> well as conclusions of medical sources trained and knowledgeable in the diagnosis and treatment of diseases and disorders.
>
> Reports from psychiatrists and other physicians, psychologists, and other professionals working in the field of mental health should contain the individual's medical history, mental status evaluation, psychological testing, diagnosis, treatment prescribed and response, prognosis, a description of the individual's daily activities, and a medical assessment describing ability to do work-related activities. These reports may also contain other observations and opinions or conclusions on such matters as the individual's ability to cope with stress, the ability to relate to other people, and the ability to function in a group or work situation.

SSR 85-16.[3]

Moreover, the Administrative Law Judge did not determine Plaintiff's mental residual functional capacity from daily activities alone. He wrote:

> While it may be true that the claimant has some degree of depression, *repeated mental examinations and clinical tests* have shown that the claimant's dysthimia [dysthymia] is not of a degree of severity that would preclude the claimant from engaging substantial gainful activity. On the contrary, the record shows that the claimant is able to relate well, he does not hallucinate and there appears to be minimal restrictions on his activities. . . .

R. 23 (emphasis added).

The "repeated mental examinations and clinical tests" relied upon by the ALJ to make his determination of Plaintiff's mental residual functional capacity are shown by the following in the record. On May 7, 2003, Plaintiff had a general psychological evaluation on a consultative basis by Louis Legum, Ph.D. R. 190. Dr. Legum reported that Plaintiff had minimal eye contact, his speech was "plodding, and slow in delivery," his affect was blunt, and his judgment and insight were minimal. R. 192. Other

---

[3] Social Security Rulings can be found at: http://www.ssa.gov/OP_Home/rulings/rulfind1.html

observations were normal.  *Id.*  On the Wechsler Adult Intelligence Scale – Third Edition, he scored a Full Scale IQ of 85, a verbal IQ of 88, and a Performance IQ of 83, placing him in the 16th percentile among his reference group.  *Id.*

Plaintiff described the physical injuries he suffered in 2001 from a motor vehicle-bicycle accident.[4]  R. 193.  He said he thought he was in good physical shape, and "has not had any secondary problems from the accident."  R. 193.

Dr. Legum concluded in part that Plaintiff

> has had a particularly difficult environment in which he grew up, which has lead [sic] to some depression.  He has never addressed the possibility of depression, which would account for his lack of inspiration to do things, including his scholastic work.  He tends to lack any motivation, and is quite content to lie on the sofa.

R. 193.  On Axis I, Dr. Legum's diagnosis was Dysthymic Disorder.[5]  R. 194.

On Axis V, Dr. Legum assigned a GAF score of 50 to 55.  R. 194.  "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.'

---

[4] On August 23, 2001, at age 19, Plaintiff was struck by a motor vehicle while riding a bicycle and thrown 100 feet.  R. 158.  An x-ray revealed "an L4 anterior wedge fracture comprising 25% of the vertebral body."  *Id.*  He was discharged four days later in a stable condition, to follow up at an orthopedic clinic.  R. 159.  Plaintiff reported pain in his back and other regions of his body on a consultative examination a year later, on October 30, 2002.  R. 185.

[5]  Dysthymia (or dysthymic disorder), according to the DSM-IV, is a mood disorder characterized by depressed feelings (sad, blue, low), loss of interest or pleasure in one's usual activities, and by at least some of the following:  altered appetite, disturbed sleep patterns, lack of energy, low self esteem, poor concentration or decision-making skills, and feelings of hopelessness.  The diagnosis describes symptoms that have persisted for more than two years but are not severe enough to meet the criteria for major depressive disorder.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at: http://www.mercksource.com (Medical Dictionary link).

*American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders*
30 (4th ed. 1994)." Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).

> GAF scores of 41 to 50 reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Manual at 34.  GAF scores of 51-60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 663 n. 2 (8th Cir. 2003).

In July and August, 2003, Plaintiff was diagnosed as having panic disorder, with agoraphobia.  R. 235.

On February 2, 2005, Plaintiff was evaluated again on a consultative basis by Linda Abeles, Ph.D.  R. 215.  After testing, Dr. Abeles noted weaknesses in Plaintiff's vocabulary knowledge, arithmetic skills, memory for numbers, knowledge of social mores, and psychomotor speed for a repetitive task, with a decline in vocabulary and arithmetic skills from two years earlier.  R. 216.  She thought that the "clinical scale results were suggestive of chronic, incapacitating symptoms including depression."  *Id.*  Plaintiff denied subjective feelings of depression, however.  *Id.*  Dr. Abeles's diagnoses in part were:  Axis I, Depressive Disorder not otherwise specified; Axis II, Personality Disorder, not otherwise specified; . . . Axis V, GAF score of 60, at the upper range of "moderate" limitations.  R. 217.  Dr. Abeles concluded:  "Provisionally, his psychological condition would not preclude him from obtaining or maintaining employment. . . . Prognosis for future success in the work place appears to be fair."  *Id.*

Dr. Abeles also filled out a "Medical Source Statement of Ability to do Work-Related Activities (Mental)."  R. 218-220.  This form covers the same kinds of abilities

as the residual functional capacity form filled out by Dr. Beaty. Dr. Abeles found that Plaintiff had no impairment in ability to understand, remember, and carry out instructions, and to make judgments on simple work-related decisions. R. 218. She found that Plaintiff had moderate limitations with respect to responding appropriately to work pressures in a usual work setting. R. 219. A moderate limitation for these purposes was defined as a limitation in this area "but the individual is still able to function satisfactorily." R. 218. She found that he had only slight limitations in interaction with the public and supervisors, and in responding appropriately to changes in a routine work setting. R. 219. A slight limitation in an area meant that despite the limitation, the "individual can generally function well." R. 218. Dr. Abeles said that there were no other capabilities affected. R. 219.

Dr. Beaty examined Plaintiff on a consultative basis on September 14, 2005. R. 223. On examination, he found Plaintiff to be depressed in mood, with pain and social isolation. R. 224. Plaintiff's affect was constricted and flat. *Id.* His judgment was deemed to be mildly to moderately impaired. *Id.* Other findings were normal. *Id.* Dr. Beaty found that Plaintiff was socially appropriate, had fair eye contact, related appropriately, and was verbally spontaneous. *Id.* Dr. Beaty said:

> Julian appears to suffer from depression related to his loss of physical competence [due to the accident that injured his spine] and chronic pain and headaches which circumscribe his range of activities. His history sounds like he may have been depressed also before his accident, growing up in a very dysfunctional family which was not very nurturing to him or appreciative of his cognitive limitations. His current condition is exacerbated in that he is not getting medication for pain and depression and physical therapy treatment for his physical limitations because of lack of resources (money).

*Id.* Dr. Beaty's diagnosis on Axis I was dysthymia.

On September 16, 2005, Dr. Beaty filled out a Mental Residual Functional Capacity Assessment form.  R. 226.  "Moderate" restrictions meant "ability to function in this area is seriously limited."  *Id*.  Dr. Beaty found Plaintiff to have "seriously limited" restrictions in the following abilities:  to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for an extended period; to perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to make simple work-related decisions; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places and use public transportation; and to set realistic goals or make plans independently of others.   R. 226-228.

A "marked" restriction meant that an ability to function in the area is "very seriously limited."  R. 226.  Dr. Beaty thought that Plaintiff had "very seriously limited" ability to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  R. 226-227.

The Administrative Law Judge had adequate evidence from psychologists to make a decision as to Plaintiff's mental residual functional capacity.  Indeed, the ALJ had a detailed mental residual functional capacity assessment from Dr. Beaty and a

similar detailed assessment from Dr. Abeles. The ALJ did not need to obtain another one. For these reasons, the first issue presented is unpersuasive.

### Whether the ALJ erred at step 2 by not finding that Plaintiff's dysthymic disorder is "severe"

Plaintiff contends that at step 2, the ALJ erred by not finding that Plaintiff's dysthymic disorder is a "severe" impairment. At step 2, one of the "severe" impairments found by the ALJ was depressive disorder, not otherwise specified. R. 25. This is the equivalent of finding that Plaintiff had dysthymic disorder, not otherwise specified, since the terms are interchangeable. *See page 7, n. 5, supra*.

Plaintiff argues that the ALJ found that Plaintiff's dysthymic disorder did not meet the 12 month durational requirement for an impairment. Doc. 15, p. 8, citing R. 23. The ALJ did not make the finding attributed to him by Plaintiff. As quoted above, the ALJ said:

> While it may be true that the claimant has some degree of depression, repeated mental examinations and clinical tests have shown that the claimant's disthimia [dysthymia] is not of a degree of severity that would preclude the claimant from engaging in substantial gainful activity.

R. 23. The ALJ found that Plaintiff's dysthymic disorder, or depression, did not preclude employment. This was a finding at steps 4 and 5, not at step 2, and it was not a finding based upon the duration of Plaintiff's depression. This second claim is also unpersuasive.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and are based upon substantial evidence in the record.  The decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 8, 2007.


        s/    William C. Sherrill, Jr.
        **WILLIAM C. SHERRILL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**